RENDERED: OCTOBER 4, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0588-MR

KENDALL PAUL SCOTT                         APPELLANT


               APPEAL FROM BUTLER CIRCUIT COURT
v.         HONORABLE TIMOTHY R. COLEMAN, JUDGE
                ACTION NO. 21-CR-00026


COMMONWEALTH OF KENTUCKY            APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE: Kendall Paul Scott ("Scott") appeals from the Butler Circuit Court's judgment revoking his probation and ordering him to serve his five (5)-year sentence of imprisonment. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 26, 2023, the Butler County Grand Jury indicted Scott with one (1) count of manslaughter in the second degree, four (4) counts of trafficking

in a controlled substance in the first degree, and one (1) count of being a persistent felony offender in the first degree. The manslaughter charge stemmed from the death of Jesse Todd Bowling, who overdosed on fentanyl allegedly sold to him by Scott in October 2020. The Commonwealth claimed that Scott's sale of the fentanyl to Bowling was the proximate cause of Bowling's death. The indictment further claimed that Scott sold fentanyl to a confidential informant on other occasions throughout October 2020.

Scott entered an *Alford*[1] Plea to the amended charge of Trafficking in a Controlled Substance – Drug Unspecified, 1st offense. In its final judgment and sentencing order entered on July 22, 2022, the Butler Circuit Court followed the Commonwealth's recommendation and sentenced Scott to five (5) years' imprisonment, probated for five (5) years. The circuit court entered an order of probation on July 22, 2022, subjecting Scott to certain conditions, including not committing a new offense while on probation.[2]

On August 25, 2022, the Commonwealth filed a motion to revoke probation based on Scott's admission to using marijuana. Attached to the motion was a violation of the supervision report. In response to Scott's admission, his

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] Scott was already on probation for two (2) other sentences in Warrant County from 2020, including burglary in the second degree and fourth-degree assault.

probation officer, Officer Amber Jones, recommended a sanction requiring Scott to complete a marijuana education packet.

On September 29, 2022, the Commonwealth filed a supplemental motion to revoke probation. The Commonwealth contended that Scott had further violated his probation when he was arrested on September 1, 2022, and charged with two (2) new offenses in Warren Circuit Court: (1) promoting contraband in the first degree and (2) being a persistent felony offender in the first degree. The Commonwealth attached a violation of supervision report dated September 8, 2022, which included the following narrative from the Warren County Regional Jail's ("WCRJ") citation:

> On 9/1/22 at approximately 1350 hours, Inmate Kendall Scott was brought to booking from the court door where he was taken into custody in a courtroom by Warren County Sheriff's Office Court Security. Inmate Scott was seated in booking and was extremely fidgety while deputies were preparing for a pat down and a strip search. Scott entered the prisoner dressing room with half of his body as deputies stopped him and advised him that he needed to be patted down prior to entering the prisoner dressing room for a strip search. Scott exited the room and then a pat down was performed. As soon as Sgt. Joseph Blair opened the prisoner dressing room to follow Scott into the room, a gray corner baggie of contraband was located. Sgt. Blair retrieved the ba[g] and exited booking to examine the contraband. Another deputy completed the strip search with Scott and he was secured in a cell. Sgt. Joseph Blair and Captain Jeff Bryant performed a presumptive field test on the contraband with a MX908 device. The test yielded two positive alarms one for methamphetamine and one for fentanyl.

The Evidence had a total package weight of 4.1 grams and appeared to be gray and white powdery substance. The evidence was packaged and secured in the evidence room for submission to the Kentucky State Police Laboratory. Upon review of the security Camera footage, you can see Scott remove an item with his right hand from his right pants pocket. He holds the item in his closed fist until he enters the dressing room the first time before staff had him exit for the pat down. When the pat down is completed and staff enter the dressing room after the pat down, this is when Sgt. Blair recovers the gray corner baggie of contraband. Inmate Scott intentionally introduced contraband into the Warren County Regional Jail.

Thereafter, at the revocation hearing in April 2023, the Commonwealth called Officer Jones as a witness. Specifically, the Commonwealth wanted to discuss the pending Warren County charges from September and asked Officer Jones to read the WCRJ's citation.

When Officer Jones began reading the citation, defense counsel objected, arguing that Officer Jones did not "have firsthand knowledge of the facts alleged [and] simply reading from a citation isn't sufficient." The circuit court overruled the objection, and Officer Jones read the complete citation. The Commonwealth concluded direct examination by asking Officer Jones if she was requesting revocation, and she said yes. The Commonwealth further asked if Scott could be actively supervised in the community or amenable to treatment, and Officer Jones responded in the negative.

-4-

On cross-examination, Officer Jones admitted she had not watched the relevant video or spoken to any of the officers involved in the new charges. She further admitted that she did not have any firsthand knowledge and only knew what was in the citation. Officer Jones further testified that she was not Scott's probation officer at the time of the revocation hearing, but she was the officer when the events surrounding the citation occurred.

At the conclusion of the hearing, the circuit court ruled that it was revoking Scott's probation and stated its concerns as Scott having a new felony charge and having used marijuana, which was strictly against probation and parole's rules and regulations. Additionally, the circuit court entered an order revoking probation on April 10, 2023. The specific findings were as follows:

> 2. The Court FINDS that Defendant, when the defendant used a controlled substance – marijuana and was arrested and charged with new offenses of law; 1. Promoting Contraband First Degree and 2. Persistent Felony Offender in the First Degree in Warren Circuit Court; Action No. 22-CR-141.
>
> 3. Based on these violations, the Court FINDS that defendant cannot be effectively managed/supervised in the community and constitutes a significant risk to the community. The Court FURTHER FINDS, based on these violations, that Defendant is not amenable to additional graduated sanctions and/or treatment at this time.

This appeal followed.

We will discuss further facts as they become relevant.

-5-

# ANALYSIS

## 1.  Standard of Review

We review probation revocation proceedings for an abuse of discretion.  *Blankenship v. Commonwealth*, 494 S.W.3d 506, 508 (Ky. App. 2015) (citation omitted).  A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

## 2.  Discussion

Scott first contends that the circuit court should not have permitted Officer Jones to read the WCRJ's citation concerning Scott's new charges, and that his ability to effectively cross-examine was hindered thereby.

As the Kentucky Court of Appeals stated,

> [i]t is clear in this Commonwealth that probation is a privilege rather than a right.  One may retain his status as a probationer only as long as the trial court is satisfied that he has not violated the terms or conditions of the probation.  It is not necessary that the Commonwealth obtain a conviction in order to accomplish revocation of probation.

*Tiryung v. Commonwealth*, 717 S.W.2d 503, 504 (Ky. App. 1986) (citations omitted).  A court may revoke probation if a preponderance of the evidence establishes a violation.  *Rasdon v. Commonwealth*, 701 S.W.2d 716, 719 (Ky. App. 1986).

Moreover, "[a] probation revocation proceeding is not a part of a criminal prosecution; the proceeding is less formal and requires less proof than a criminal trial." *Sullivan v. Commonwealth*, 476 S.W.3d 260, 263 (Ky. App. 2015) (citation omitted). Additionally, "the Kentucky Rules of Evidence do not apply in such proceedings[,] and hearsay is admissible." *Id.*

In this case, Scott was afforded the requisite due process. Indeed, "[r]eliable hearsay testimony is permissible at probation revocation proceedings and a finding of a witness's unavailability is not required." *Id.* (citations omitted). Moreover, "there is no absolute right to confront witnesses [at a revocation hearing], especially when the reliability of the witnesses . . . can be easily ascertained." *Marshall v. Commonwealth*, 638 S.W.2d 288, 289 (Ky. App. 1982).

In addition, "there is no independent investigation requirement for supervised release revocation cases on the part of probation officers and a witness need not have firsthand knowledge of the underlying facts in order to testify competently at a revocation hearing." *Sullivan*, *supra*, at 264 (internal quotation marks and citations omitted). Instead, "the thoroughness of the testifying witness's own investigation or the extent of his personal knowledge are simply factors to be weighed by the [trial] judge." *Id.* (citations omitted).

Here, Officer Jones, a sworn witness and Scott's probation officer at the time of the applicable events, testified to the claimed violations based upon the

WCRJ's citation and the violation report. The violation report upon which Officer Jones based her testimony contained a detailed account of the underlying events, including the date, time, and place at which Scott was alleged to have introduced contraband into the detention center. Officer Jones's testimony was within the scope of her employment as a trained probation officer, and Scott has pointed to no evidence demonstrating that her testimony was unreliable or not credible. Moreover, Scott was given the opportunity to cross-examine Officer Jones, which he did.

Under these facts, Scott's assertion that the allowance of Officer Jones's testimony violated his right to confront and cross-examine the witnesses against him is not well-taken. Officer Jones's testimony and the documentary evidence upon which she relied are credible evidence sufficient to support the circuit court's finding that Scott had violated his probation by committing a new offense. Instead, although the jailer's "live testimony may have been preferable, his absence does not render the revocation proceeding unconstitutional." *Sullivan*, *supra*, at 264 (citation omitted).

Scott next argues that the circuit court failed to provide adequate findings under Kentucky Revised Statute ("KRS") 439.3106, which provides in applicable part that:

(1) Supervised individuals shall be subject to:

(a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

In summary:

KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked.

*Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014). A panel of this Court has stated that "[n]either KRS 439.3106 nor *Andrews* require anything more than [the foregoing findings] supported by the evidence of record." *McClure v. Commonwealth*, 457 S.W.3d 728, 733 (Ky. App. 2015).

In this case, the record contradicts Scott's argument that the circuit court failed to enter a sufficient finding that he posed a significant risk to the community that could not be appropriately managed. On the written order revoking Scott's probation, the circuit court found that Scott had been charged with promoting contraband in the first degree. The record indicates that the

"contraband" Scott was accused of bringing into the facility was fentanyl, which was the drug he had initially been charged with selling to Bowling and which had allegedly led to Bowling's overdose and death. Thus, the circuit court's finding that Scott posed a significant risk to the community, which could not be appropriately managed, was supported by the record.

In addition, the circuit court's statements at the conclusion of the hearing further demonstrated that the court considered the gravity of Scott's actions. Specifically, the circuit court was very concerned about Scott's new indictment and his marijuana use.

The circuit court further found – and the evidence demonstrated – that Scott could not be adequately managed in the community. Within months of being placed on probation, he was driving on a revoked license and failed to report his contacts with law enforcement. In addition to his charges in Warren County, he admitted to using marijuana on one occasion and had a positive drug test on another. Thus, the circuit court's conclusions that Scott was a significant danger to the community and could not be managed in the community were supported by the record in this case, and the circuit court did not abuse its discretion in revoking Scott's probation.

Finally, Scott argues that the circuit court failed to consider alternative graduated sanctions less than revocation. However, the statutory language of KRS

439.3106 does not require the circuit court to "consider revocation only as a last resort." *Hall v. Commonwealth*, 566 S.W.3d 578, 581 (Ky. App. 2018). Indeed, "KRS 439.3106 permits, but does not require, a trial court to employ lesser sanctions . . . [n]othing in the statute or in the Supreme Court's interpretation of it *requires* the trial court to impose lesser sanctions prior to revoking probation." *McClure*, 457 S.W.3d at 732. The circuit court examined Scott's behavior and appropriately decided to revoke his probation. There was no abuse of discretion.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the Butler Circuit Court's order revoking Scott's probation.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Kayley Barnes<br>Frankfort, Kentucky | Russell Coleman<br>Attorney General of Kentucky |
| | Ken W. Riggs<br>Assistant Attorney General<br>Frankfort, Kentucky |